[Doc. Nos. 19, 23]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

DICKSON HIDALGO PAREDES, et al.,

                    Plaintiffs,          Civil No. 15-2929 (JBS/JS)

        v.

CITY OF ATLANTIC CITY, et al.,

                    Defendants.

## MEMORANDUM OPINION AND ORDER

This Opinion addresses whether plaintiffs' attorney entered into an oral settlement agreement with the moving defendants that binds plaintiffs. The answer is yes. Therefore, the moving defendants will be dismissed.

This matter is before the Court on the "Motion to Enforce Settlement or in the Alternative to Disqualify Thomas P. Lutz, Esquire as Counsel for Plaintiff" [Doc. No. 19]. The motion was first filed by defendant Police Officer James M. Bower ("Bower"). Thereafter, essentially the same motion was filed by defendants Egg Harbor Township ("EHT") and Egg Harbor Township Police Department ("EHTPD") [Doc. No. 23].[1] The Court received the opposition of plaintiffs [Doc. Nos. 27, 29, 34] and the

---

[1] EHT and EHTPD will be treated the same because they are not separate legal entities.

1

replies of Bower [Doc. Nos. 28, 33], and recently held oral argument and an evidentiary hearing.[2] Bower and plaintiffs' counsel, Thomas P. Lutz, Esquire ("Lutz"), testified at the hearing. Lutz represents plaintiffs Dickson Hidalgo Paredes and his minor son, D.V.R. Pursuant to 28 U.S.C. §636(c), the parties consented to the jurisdiction of this Court to decide this motion. Transcript ("Tr.") of January 28, 2016 Hearing 5:9 to 6:7.

Background

At all relevant times Bower was a police officer with the Atlantic City Police Department ("ACPD") and his teenage son (Jim) was a student at EHT High School. After Jim's iPhone went missing on January 9, 2014, an iPhone tracker indicated the phone was located at 7 Glen Drive, Egg Harbor Township, Atlantic County, New Jersey. This was the address of plaintiff's son (D.V.R.) who was acquainted with Jim from high school. After the iPhone tracker was activated, Bower called the EHTPD and then went to D.V.R.'s residence at 6 Glen Drive.

The parties dispute what happened at 6 Glen Drive. The long and short of it is that plaintiffs claim Bower and members of the EHTPD illegally entered and searched his home. Bower denies

---

[2] On a disputed motion to enforce a settlement, a hearing must be held to establish the facts unless the facts are uncontroverted. Polanco v. Dabney, 2015 WL 357830, at *4 (N.J. App. Div. Jan. 29, 2015).

this occurred. Subsequent to January 9, 2014, D.V.R. was suspended from EHT High School.

On January 10, 2014, Bower filed a criminal complaint against D.V.R. with the Juvenile Delinquency Chancery Division, Family Part, Atlantic County. Bower Exhibit ("Exh.") A. When Bower appeared at the Intake Services Conference on March 27, 2014, Lutz represented D.V.R. and his father. Lutz requested and was granted a postponement. In the meantime, on April 4, 2014, Lutz served Atlantic City and EHT with a Tort Claim Notice pursuant to N.J.S.A. Title 59:8-4. Exh. D.

The second court appearance was on April 10, 2014. Although the parties appeared on that date, the scheduled proceeding was postponed at the parties' request. On that date, however, Bower told Lutz he wanted to "drop the charges" after Lutz told him D.V.R. was suspended from school for ten (10) days. Tr. 18:16-24. Bower, Lutz, plaintiff and/or D.V.R. also spoke about what happened and shook hands. Tr. 19:20 to 20:18. After Bower left it was his impression that if he dropped the charges against D.V.R. plaintiffs would drop the "Tort Claim." Tr. 20:10-13.

Subsequent to these discussions Lutz left two voicemail messages for Bower.[3] Lutz's April 23, 2014, voicemail message stated as follows:

---

[3] Bower provided the Court with a CD that contained the voice mail messages. The parties stipulated to the authenticity of the messages. The Court transcribed the messages.

This is Tom Lutz, the attorney for that kid and his father. It's around 2:00 on Wednesday. I just wanted to touch base with you. My client and his father they want to dismiss Tort Claims idea.  I think I can withdraw the Tort Claims Notice. They would do that. I was just wondering if you have you touched based with any of your bosses and if they are going to have a problem with us doing this. I could always draft something like a little very very short kind of agreement saying that if you are willing to dismiss it I will notify EHT and AC that we are going to withdraw the Notice of Tort Claim and agree not to ever file anything on that case at all.

If you want to give me a call if you want any information from me just give me a call, 609-xxx-xxxx. I didn't call the EHT's attorney Mark Freidman yet. I was going to but I said let me see if I have any information from you. Any feedback from your department.

Alright. I'll check my email later and maybe we can talk tomorrow or Thursday.

Thanks a lot. Bye.

Lutz's April 28, 2014, voicemail message to Bower stated:

Hey Jim, this is Tom Lutz, the attorney. Got your VM this morning. Um, yeah, I figured you didn't, I figured you were busy last week and maybe you didn't hear something back from your department but I'm glad you called me. Um, I gotta call that lady today down at the courthouse or else she is going to reschedule this and we are all going to have to show up again. But here is what I will do. If you want to, if you feel ok to giving me your email address, I can email what I am going to put together. Like a one page Release saying that we are going to drop the Tort Claims Notice and we are not going to do anything when the two years comes up or when the six months period ends--that lockout period. And I'll just put in there that in exchange for us doing that you will dismiss the charge. And, since your office said that they did not have a problem with it, I don't think EHT is going [to] have a problem with it either. Mark Freidman, you know, few weeks ago said, you know, that they didn't really care what happens. It's you, your private

complaint. Um, you know, but anyway we can dismiss and
you can dismiss. And then if EHT wants to say
something down the road, then they can. If you want to
give me your email address and I will give you mine.
It's my initials tl.kloffices@gmail.com. I used to be
Kerstetter and Lutz. So its tl.kloffices@gmail.com. If
you want to shoot me off just something saying, yeah
email me that letter Tom. I'll do that to you. If you
like it you can change it whatever. But, at least I
can tell the lady at the court that hey we're are
working on a dismissal and see just will both have to
sign it, and we will mail it in. Email me and I will
get your email address off the, you know, what you
sent to me. And I'll get that off to you today.

Thanks Jim, Bye.

After receiving this second voice mail message Bower sent

Lutz an email on April 28, 2014 at 11:43 a.m. (Exh. G), which

stated:

Hey Tom, Whatever I have to do on my end you have my
full cooperation.
J Bower.

Bower testified that in effect he told Lutz he would cooperate

fully to drop the charges against D.V.R. in exchange for

plaintiffs dropping the "Tort Claim." Tr. 23:1-7.

Lutz responded to Bower's email on April 28, 2014 at 2:27

p.m. (Exh. G) and forwarded a Release. The email reads:

Jim:

Attached is a draft of a Mutual Release. Please read
it and see if it makes sense. I will add whatever
you, or your Police Department, wants added.

I did not mention your son because I did not think
his name needs to be in it. You can have your
office, or the EHT P.D. Of course, look at the
Release before we all sign it. I just want to be
able to call that woman at the Court whom we spoke

5

to last week and say we have a Release being
reviewed by all.

When we have a final draft, I can meet my clients,
witness them sign, and then, if you like, I can meet
you separately (maybe at the Wawa at the corner of
Ocean Heights and English Creek Ave. near my house) to
witness you sign. Or you can have your own notary
witness it after I see my clients sign the final
draft and then give it to you.

Let me know what you think. By the way, if we all
sign, and then somebody (like EHT's attorney) wants
something else added, my clients will not have a
problem amending/adding to it. I just don't want to
have the woman at the Court need to reschedule an
appearance for everyone, although I can see her
saying we need to reappear before her to sign
something she has prepared.

Her name is: Ms. Joleen Peterson; phone # xxx-xxxx.
I am going to call her now and say we have a Release
in the works, but not fully signed.

Thanks,

Tom Lutz, Esq.

Exhs. G, H. In sum and substance, the Release provided that

Bower would dismiss the criminal charge against D.V.R., and

plaintiff and D.V.R. would withdraw their notice of Tort Claim

and dismiss with prejudice all claims or potential claims

against Bower, the ACPD and the EHTPD. Exh. H.

The next communication between Bower and Lutz was on May 5,

2014 at 10:08 a.m., when Bower sent the following email (Exh. I)

confirming that he withdrew his criminal complaint that morning.

(Tr. 32:19 to 33:33).

6

> Hey Tom it's Jim Bower the charges have been withdrawn
> as of 5/5/14. Let's get this behind us, I'm sure you
> have more important cases to deal with. Thanks for
> your integrity. That means more to me than a signed
> piece of paper.
>
> Jim Bower

The signed withdrawal Bower filed with the Chancery Division-

Family Part, Atlantic County (Dkt. No. FJ-01-734-14) (Exh. L)

states:

> I do hereby certify that the matters and differences
> between the defendant and myself have been amicably
> resolved to my full satisfaction. I do hereby
> respectfully request that the complaint heretofore
> signed by me in the above matter be withdrawn and that
> these proceedings be dismissed.
>
> I certify that I am making this request voluntarily,
> without any force or duress or promise of reward from
> defendant or anyone else.

Bower thought "the matter was behind us" and "over" when he

withdrew the charges. Tr. 34:13-19.

After Bower confirmed with Lutz that the criminal complaint

was withdrawn, Lutz emailed Bower on May 5, 2014 at 12:06 p.m.

(Exh. I) and stated:

> Jim:
>
> If you have not withdrawn the charge yet, you may
> want to wait. I have a letter drafted to the
> Atlantic City Dept. of Law and Egg Harbor Township
> Dept. of Law asking for certain assurances from them
> because only they can give my clients these
> assurances. For example, my clients will want to have
> records of the ten day high-school suspension
> removed from the juvenile's record. I also need
> their legal departments' permission to approve any
> mutual release that we may enter. And I'm asking

them both for their consent to have me discuss these
matters further with you.

The problem is that neither legal department has
reached out to me. So, I need to get some input from
them before we resolve anything between you and my
clients. My letters to A.C. and E.H.T. are done and
being mailed today. They may respond to me by saying
they don't want me to have any further communication
with you. I hope they do not take such a position,
but they may. I will let you know what they say.
Thank you.

Sincerely,

Thomas P. Lutz, Esq.

Bower did not respond to Lutz's email. Nor did Lutz get
back in touch with Bower as he wrote he would. The next Bower
heard from plaintiffs was when he was served with plaintiffs'
federal court complaint that was filed on April 26, 2015. The
named defendants are the City of Atlantic City, New Jersey,
ACPD, EHT, EHTPD, EHT High School and Police Officer James M.
Bower. Plaintiffs also named John Doe and ABC parties. On April
28, 2015, the Internal Affairs Section of the ACPD acknowledged
to Lutz that it received plaintiff's complaint about the alleged
improper arrest on January 9, 2014. Exh. M. Bower acknowledged
notification from Internal Affairs on April 28, 2016. Exh. N.

Bower argues that as soon as he dropped the criminal charge
against D.V.R. there was a binding oral agreement that
plaintiffs would drop all claims against himself, the ACPD and
the EHTPD. Tr. 59:3-25. Plaintiffs argue there was no binding
agreement until a Release was signed. Plaintiffs also argue the

8

settlement was contingent on D.V.R.'s suspension being removed from his school records. In response, Bower argues Lutz never mentioned before he withdrew the charges against D.V.R. that the release of all claims was contingent or conditioned on D.V.R.'s suspension being removed from his school records. Tr. 57:25 to 58:20; 59:3-6. Plaintiffs argue the real reason Bower withdrew the charges against D.V.R. was because he regretted his actions and he was "anxious" about the ACPD's Internal Affairs investigation. Tr. 78:12-21. Plaintiffs also argue there was no binding agreement because Bower did not withdraw his criminal complaint with prejudice. Bower responds by arguing his complaint was dismissed with prejudice and that after he withdrew the charges he had no intention of changing his mind. Tr. 61:10-13. Plaintiffs also argue that Bower waited too long to raise his "settlement" defense and this demonstrates the defense is not viable.

At bottom, the Court must decide whether Bower and Lutz entered into a binding oral settlement agreement that Bower would drop the criminal charge against D.V.R. in exchange for plaintiffs releasing their claims against Bower, the ACPD and the EHTPD. As discussed herein, the Court holds that Bower and Lutz entered into an oral settlement agreement binding plaintiffs and, therefore, Bower, the ACPD, EHT and the EHTPD shall be dismissed from the case.

Discussion

    The construction and enforcement of the parties' alleged settlement agreement is governed by principles of New Jersey contract law. Plymouth Mutual Life Ins. Co. v. Illinois Mid-Continent Life Ins. Co. of Chicago, Ill., 378 F.2d 389, 391 (3d Cir. 1967); Pacific Alliance Grp. Ltd. v. Pure Energy Corp., C.A. No. 02-4216 (DRD), 2006 WL 166470, at *2 (D.N.J. Jan. 23, 2006). Under New Jersey law a settlement agreement between parties to a lawsuit is a separate and independent contract from the underlying dispute. Plymouth Alliance Grp., at *2 (citation omitted). "The burden is on the moving party [in this case Bower] to establish that the parties entered into a contract of settlement." LNT Merch. Co. v. Dyson, Inc., C.A. No. 08-2883 (SRC), 2009 WL 2169236, at *2 (D.N.J. July 21, 2009)(citing Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 475 (App. Div. 1997)); United States v. Lightman, 988 F. Supp. 448, 458 (D.N.J. 1997). A settlement agreement is a form of a contract and may be enforced even if it is not in writing. Pascerella v. Bruck, 190 N.J. Super. 118, 124 (App. Div. 1983)("That the agreement to settle was orally made is of no consequence[.]").

    New Jersey public policy favors settlements of litigation. See Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472 (1990). However, notwithstanding the policy favoring settlements, a settlement "should not be enforced where there appears to have

10

been an absence of mutuality of accord between the parties or
their attorneys in some substantial particulars, or the
stipulated agreement is incomplete in some of its material and
essential terms." McDonnell v. Engine Distributors, C.A. No. 03-
1999, 2007 WL 2814628, at *3 (D.N.J. Sept. 24, 2007) (citation
and quotation omitted).

    In order to have an enforceable settlement there "must be a
'meeting of the minds' for each material term to an agreement."
Pacific Alliance, at *3 (citing Sampson v. Pierson, 140 N.J. Eq.
524 (N.J. Ch. 1947)). "A meeting of the minds occurs when there
has been a common understanding and mutual assent of all the
[material] terms of a contract." Knight v. New England Mut. Life
Ins. Co., 220 N.J. Super. 560, 565 (App. Div. 1987). The meeting
of the minds requirement is an essential element to the valid
formation of all contracts. Am. Furniture Mfg. Inc. v. Value
Furniture & Mattress Warehouse, 2009 WL 88922, at *2 (N.J.
Super. Ct. App. Div. Nov. 18, 2008). Where the parties do not
agree to one or more essential terms, courts generally hold that
an agreement is unenforceable. Weichert Co. Realtors v. Ryan,
128 N.J. 427, 435 (1992).

    Objective manifestations of intent are controlling when
determining if there is a meeting of the minds. See Brawer v.
Brawer, 329 N.J. Super. 273, 283 (App. Div. 2000)(citation
omitted)("A contracting party is bound by the apparent intention

he or she outwardly manifests to the other party. It is immaterial that he or she has a different, secret intention from that outwardly manifested."); Leitner v. Braen, 51 N.J. Super. 31, 38 (App. Div. 1958)("The phrase, 'meeting of the minds,' can properly mean only the agreement reached by the parties as expressed, i.e., their manifested intention, not one secret or undisclosed, which may be wholly at variance with the former."). "Where there is a misunderstanding between the parties pertaining to one of the material terms of an agreement, there is no meeting of the minds, and therefore no contract." Pacific Alliance Grp., at * 3; see also D.R. by M.R. and B.R. v. East Brunswick Bd. of Educ., 838 F. Supp. 184, 191-92 (D.N.J. 1993) ("[A] contract cannot be made when there has been no common understanding and mutual assent to the terms of a contract."); Big M, Inc. v. Dryden Advisory Grp., C.A. No. 08-3567 (KSH), 2009 WL 1905106, at * 22 (D.N.J. June 30, 2009) (finding no meeting of the minds where the parties did not attach the same meaning to a contract term).

Having heard the live testimony of Bower and Lutz, and having reviewed the communications in evidence, the Court is convinced that Bower and Lutz entered into an oral settlement agreement that binds plaintiffs. Pursuant to the agreement, plaintiffs agreed to release their claims against Bower, the ACPD and the EHTPD, if Bower dismissed the criminal charge

12

against D.V.R. Bower fulfilled his part of the agreement on May 5, 2014 when he dismissed the criminal charge against D.V.R. As soon as the charge was dismissed, the settlement agreement became effective. Thus, plaintiffs' claims against Bower, the ACPD and the EHT/EHTPD will be dismissed.

As already noted, the parties may enter into an oral agreement to settle if they agree upon the material terms of their settlement. Further, an oral settlement agreement need not be made in the presence of the court nor reduced to writing in order to have legal effect. Pascerella, supra; Lang v. Tewksbury Township, C.A. No. 10-2564 (MLC), 2012 WL 503677, at *2 (D.N.J. Feb. 15, 2012). This is precisely what occurred here. At all relevant times Lutz made it clear that his clients were willing to withdraw their "Tort Claim" if Bower withdrew his complaint.[4] On April 23, 2014, Lutz told Bowers, "I think I can withdraw the Tort Claims Notice…. I will notify EHT and AC that we are going to withdraw the Notice of Tort Claim and agree not to ever file anything on that [D.V.R.] case at all." On April 28, 2014, Lutz told Bowers:

> But here is what I will do. If you want to, if you
> feel ok to giving me your email address, I can email

---

[4] It is clear from the parties' actions and the context of the parties' discussions, that when they referred to the "Tort Claim" or "Tort Claims," they intended that all claims against Bowers, the ACPD and the EHTPD would be dismissed or withdrawn. In fact, plaintiffs do not contest the assertion that "Tort Claims" refers to all of plaintiffs' claims and not just those which required notice pursuant to N.J.S.A 59:8-4.

what I am going to put together. Like a one page
Release saying that we are going to drop the Tort
Claims Notice and we are not going to do anything when
the two years comes up or when the six months period
ends--that lockout period. And I'll just put in there
that in exchange for us doing that you will dismiss
the charge…. Um, you know, but anyway we can dismiss
and you can dismiss.

Bower's email later the same day agreed with Lutz's settlement

terms. Bower wrote, "Hey Tom, whatever I have to do on my end

you have my full cooperation." The Release Lutz sent Bower on

April 28, 2014 confirmed the parties' settlement terms. The

Release provided that if Bower dismissed D.V.R.'s criminal

complaint with prejudice, plaintiffs would dismiss with

prejudice all claims or potential claims against James Bower and

the AC and EHT Police Departments. The Release Lutz sent Bower

specifically reads:

MUTUAL RELEASE

This Mutual Release dated April ___, 2014 is given by
Dickson Hidalgo Paredes and his son (D.V.R.].

…

WHEREAS, the three individuals Mr. Bower, Mr. Paredes,
and his son [D.V.R.], have agreed to dismiss the
complaint and Notice of Tort Claim, the three
Releasors agree to the following:

…

2. Dickson Hidalgo Paredes, and his son [D.V.R], (a
juvenile) will withdraw the Notices of Tort Claim
filed against the Atlantic City Police Dept., the Egg
Harbor Township Police Dept., and dismiss with
prejudice all claims or potential claims against James
Bower and both Police Departments.

14

On May 5, 2014, Bower confirmed to Lutz he withdrew his complaint. ("Hey Tom its Jim Bower. The charges have been withdrawn as of May 5, 2014." Exh. I).

The foregoing voice and email exchanges make it unmistakingly clear that if Bower dismissed his criminal complaint plaintiffs would dismiss and release their claims against Bower, the ACPD and the EHTPD. The settlement agreement was effective as soon as Bower dismissed his complaint against D.V.R. Lutz's contrary arguments are not persuasive.

Lutz argues the parties' settlement agreement was not effective until a Release was signed. However, this position is belied by the parties' written communications. Nowhere did Lutz state that the parties' settlement was contingent or conditioned on a signed Release. The Court does not find credible Lutz's account that he indicated to Bower the settlement was contingent on a signed Release. See generally Tr. 66:12 to 69:25. The Court finds that if this were the case the condition would have been specifically spelled out in Lutz's voice and email messages. This was not done. Although there were fleeting references to a Release in some of Lutz's communications, he never indicated the settlement was conditioned on a signed Release. It is of no moment that Lutz may have subjectively wanted a signed Release. This is so because a contract only arises from the "manifest intention of the parties." Finocchairo v. Squire Corrugated

15

Container Corp., C.A. No. 05-5154 (SRC), 2008 WL 305337, at *3 (D.N.J. Jan. 28, 2008 (citation and quotation omitted). Lutz never manifested an intention that a signed Release was a pre-condition to a final settlement. A party's secret or different intention from what is outwardly manifested is not controlling. Brawer, 329 N.J. Super. at 283. ("[O]bjective manifestations of intent are sufficient and controlling."). Before Bower withdrew his complaint Lutz never manifested that a Release must be signed before the Release became effective.

Lutz insists he required a signed Release to settle. His Reply Certification [Doc. No. 34] states at ¶7, "I chose to **require** both Mr. Paredes and D.V.R. to approve a final Settlement Agreement/Release." (Emphasis in original). This argument fails because Lutz never expressed or manifested this intention to Bower. Lutz's unexpressed intentions are not controlling. Lutz argues, "Officer Bower knew [Lutz] required both [plaintiffs'] signatures. And I never waived that requirement." Id. To the contrary, Bower justifiably believed his settlement agreement was effective when he withdrew his complaint. Tr. 34:13-17; 48:1-3; 59:16-25. The key email Lutz relies upon is from April 28, 2014 (Exh. G) when he sent Lutz a "draft of a Mutual Release." Although Lutz indicates his client will review and sign the Release, Lutz never indicated in this or any other communication that a signed Release was a condition

to settling. This being the case, Bower had no reason to believe anything other than the fact that if he withdrew his complaint the "deal was done." The fact that Bower did not believe a signed Release was a condition to settling is evidenced by his May 5, 2014 email (Exh. I) where he told Lutz, "[t]hanks for your integrity. That means more to me than a signed piece of paper."

It also is of no moment that Lutz contemplated that a Release would eventually be signed. In other words, a signed Release is not a <u>sine</u> <u>qua</u> <u>non</u> for a binding settlement. Oral settlements are binding even when the parties contemplate the later execution of a formal document to memorialize their undertaking. <u>Holland v. New Jersey Resources Corp.</u>, C.A. No. 12-07858, 2013 WL 3288162, at *2 (D.N.J. June 28, 2013)(citation and quotation omitted); <u>Finocchiaro</u>, at *3 ("[A]n oral agreement as to the essential terms of a settlement is valid even though the parties intend to reduce their agreement to a formal writing at a later time"); <u>Bowles v. New York Liberty</u>, C.A. No. 11-3529 (ES), 2014 WL 7148916, at *2 (D.N.J. Dec. 15, 2014)(citation omitted)("If the negotiations are finished and the contract between the parties is complete in all its terms and the parties intend that it shall be binding, then it is enforceable, although lacking in formality and although the parties

contemplate that a formal agreement shall be drawn and signed.").

In another attempt to defeat Bower's motion, Lutz argues the settlement was contingent on EHT removing D.V.R.'s suspension. This argument is rejected. Lutz did not mention this issue to Bower until after the parties agreed on their settlement terms and until after Bower withdrew his complaint. Tr. 58:10-20. As already discussed, once the complaint was withdrawn the settlement agreement was effective. The removal of D.V.R.'s suspension was an afterthought that occurred to Lutz after the parties' oral agreement became effective. A contract is enforceable if the parties agree on essential settlement terms and manifest an intention to be bound by those terms. United States v. Lightman, 988 F. Supp. at 458. The removal of D.V.R.'s suspension was not an agreed upon settlement term. The fact that this was an afterthought on Lutz's part is evidenced by Lutz's testimony that the removal of D.V.R.'s suspension did not occur to him until after he sent the Release to Bower. Tr. 93:14 to 94:19. The Court finds that it was not until after Bower withdrew his criminal complaint that Lutz first mentioned the removal of D.V.R.'s suspension. By that time the parties' settlement agreement was binding.

Lutz argues the parties' settlement was not effective because Bower did not withdraw his complaint with prejudice.

This argument is also meritless. Bower unquestionably withdrew his complaint and no one can seriously argue there is a possibility of reinstatement. Further, Bower satisfied his end of the parties' agreement because a withdrawal is with prejudice unless "without prejudice" language is mentioned; this did not occur here. Bower confirmed he intended to withdraw his complaint with prejudice which is evidenced by the fact he never sought to reinstate his complaint. Tr. 61:10 to 62:9. This is true even though plaintiffs are trying to back out of their agreement. Further, it would be inherently unfair to Bower if his settlement is now voided since plaintiffs have already enjoyed the "benefit of the bargain," _i.e._, Bower withdrew the criminal complaint against D.V.R. with prejudice.

Lutz argues the real reason Bower withdrew his complaint was because he was anxious about the ACPD's Internal Affairs investigation and not because of the parties' settlement agreement. See Sur-Reply Certification of Lutz, ¶¶5-6, 10 [Doc. No. 29]. This argument is debunked by the fact that Bower's complaint was withdrawn long before he was notified of the involvement of the ACPD's Internal Affairs section. Bower withdrew the criminal complaint on May 5, 2014. The earliest date Bower was notified of the involvement of Internal Affairs was on April 28, 2016, almost two (2) years later.

Last, Lutz argues Bower waited too long after his May 5, 2014 email to raise the defense of the parties' settlement agreement. Lutz implies that because Bower did not raise the issue right after his May 5, 2014 email, this shows Bower's defense lacks credibility. This argument is rejected. Bower is not a lawyer and has no formal legal training. He did not know or have reason to believe Lutz would use his silence against him. Further, after the complaint was filed Bower did not wait an inordinate amount of time to file the present motion.[5]

Although the Court finds there was a binding oral agreement to settle, the Court is compelled to make it clear who is and who is not included in the settlement. The only parties who settled and who released claims against each other are plaintiffs, Bower, the ACPD and the EHTPD. EHT High School did not settle and remains a party to the case. Further, the parties only agreed to settle and release the EHTPD. The parties did not settle and release the EHTPD's individual police officers. This was never discussed in the context of the parties' settlement discussions. This is also evidenced by the fact that individual

---

[5] To the extent necessary, the Court deems Bower's answer to include an affirmative defense of release. The same is true for EHT/EHTD. See Feuerstein v. Simpson, 582 Fed. Appx. 93, 97 n.3 (3d Cir. 2014)(a court may sua sponte grant leave to amend on its own initiative).

EHT police officers were not included or even mentioned in the Release Lutz prepared.[6]

Conclusion and Order

Accordingly, for all the foregoing reasons,

IT IS HEREBY ORDERED this 2nd day of May, 2016, that the motions to enforce plaintiffs' settlement agreement with defendants Egg Harbor Township, Egg Harbor Township Police Department, the Atlantic City Police Department and Police Officer James M. Bower, filed by defendants Bower and by Egg Harbor Township and the Egg Harbor Township Police Department, are GRANTED. These parties shall be dismissed from the case.[7] EHT High School is not a party to the settlement agreement and shall not be dismissed; and it is further

---

[6] To be clear, plaintiffs do not dispute the general proposition that Lutz had authority to enter into a binding settlement agreement. See Reply Certification of Lutz at ¶3. Nevertheless, even if plaintiffs denied Lutz had this authority the argument would be rejected because of Lutz's apparent authority. Where a client's words or conduct communicated to its adversary creates a reasonable belief that the attorney possesses authority to conclude a settlement, the settlement may be enforced. Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 475 (App. Div. 1997). Lutz's continuous settlement negotiations and the fact that plaintiffs never objected to Lutz's negotiations, created a reasonable belief on Bower's part that Lutz had the apparent authority to bind plaintiffs. At all relevant times Lutz was held out as plaintiffs' attorney with authorized settlement authority.
[7] As noted, EHT and the EHTPD are not separate legal entities. Tr. 98:22 to 99:11.

ORDERED that the alternative request of Bower to disqualify Thomas P. Lutz, Esquire, as counsel for plaintiffs is DENIED as moot.[8]

s/Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

---

[8] For completeness sake the Court adds that plaintiffs do not argue that Lutz lacked the authority to bind the minor plaintiff. In any event, Bower cites authority that this is permitted. Roe v. Gunnery, Inc., HHDCV 115035705, 2013 WL 1849284 (Conn. Super. Ct. Apr. 10, 2013)(binding the minor plaintiff to an oral settlement agreement entered into by his attorney and refusing to void the "contract").