IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DICKSON HIDALGO PAREDES, and D.V.R. (A juvenile, by his parent and guardian, Dickson Hidalgo Paredes) | HONORABLE JEROME B. SIMANDLE |
| Plaintiff(s), | Civil Action No. 15-cv-2929 (JBS/JS) |
| v. | **OPINION** |
| EGG HARBOR TOWNSHIP BOARD OF EDUCATION; DR. ALICIA K. SCELSO; E.H.T. POLICE OFFICER DAVID ALGERI, E.H.T. POLICE OFFICER CURT WARE, E.H.T. POLICE OFFICER BURNS, E.H.T. POLICE OFFICER DEFAZIO, JOHN DOE #1-5 (fictitious names), ABC CORP. #1-5 (fictitious names), XYZ CITY #1-5(fictitious names) | |
| Defendants. | |

APPEARANCES:

Thomas P. Lutz, Esq.
Cornerstone Commerce Center
1201 New Road, Suite 334
Linwood, NJ 08221
    Attorney for Plaintiffs Dickson Hidalgo Paredes and
    Diomar Valentin Rivera

Regina M. Phillips, Esq.
Madden & Madden, P.A.
108 Kings Highway East, Suite 200
Haddonfield, NJ 08033
    Attorneys for Dr. Alicia K. Scelso and the Egg Harbor
    Township Board of Education

Robert Merenich, Esq.
Gemmel, Todd & Merenich, P.A.
767 Shore Road
P.O. Box 296
Linwood, NJ 08221
    Attorney for Defendants Officer David Algeri, Officer Curt
    Ware, Officer Burns and Officer Defazio

**SIMANDLE**, District Judge:

I.   **INTRODUCTION**

This is an action by Plaintiffs Dickson Hidalgo Paredes, and his son, Diomar Valentin Rivera, seeking to hold various defendants liable for a variety of constitutional and common law tort claims arising out of Egg Harbor Township high school's decision to suspend Plaintiff for the alleged theft of another student's cell phone, after being informed of such by the Egg Harbor Township Police Dept., pursuant to a Memorandum Agreement between the Egg Harbor Township Police Dept. and the Egg Harbor Township Board of Education.

Plaintiff additionally seeks an Order expunging his disciplinary record and a declaratory judgment that the Uniform Memorandum of Agreement between the Egg Harbor Township Police Dept. and the Egg Harbor Township School District is "invalid" and is "being used to discipline EHT High School students without due process and based on preliminary, speculative and often inaccurate information [of] off-campus incidents."(Id.)

Presently before the Court are two cross-motions for summary judgment. The "Board Defendants", Dr. Alicia K. Scelso and the Egg Harbor Township Board of Education, have moved for summary judgment. In addition, the "Police Defendants", Officer David Algeri, Officer Curt Ware, Officer Burns and Officer Defazio of the Egg Harbor Township Police Dept., have submitted a separate

motion for summary judgment. Plaintiffs, Dickson Hidalgo Paredes, and his son, Diomar Valentin Rivera, have submitted a cross-motion for summary judgment against both groups of Defendants.

The principal issue to be addressed is whether the undisputed material facts could be found by a reasonable factfinder to demonstrate that any of the Defendants violated any constitutional right of Plaintiffs. For the reasons set forth below, the Board Defendants' motion for summary judgment will be granted, and the Police Defendants' motion for summary judgment will be granted. Accordingly, Plaintiffs' motion for summary judgment will be denied.

## II.  BACKGROUND

### A. Factual Background[1]

_____

[1] The Court distills this undisputed version of events from the parties' statements of material facts, affidavits, and exhibits, and recounts them in the manner most favorable to Plaintiff, as the party opposing Defendants' motions for summary judgment. The Court disregards, as it must, those portions of the parties' statements of material facts that lack citation to relevant record evidence (unless admitted by the opponent), contain improper legal argument or conclusions, or recite factual irrelevancies. See generally L. Civ. R. 56.1(a); see also Kemly v. Werner Co., 151 F. Supp. 3d. 496, 499 n. 2 (D.N.J. 2015) (disregarding portions of the parties' statements of material facts on these grounds); Jones v. Sanko Steamship Co., Ltd., 148 F. Supp. 3d 374, 379 n. 9 (D.N.J. 2015) (same). The Court notes that Plaintiffs' "Opposition to Certain Facts" [Docket Item 71] does not comply with L. Civ. R. 56.1(a), which requires "a responsive statement of material facts, addressing each paragraph of a [Defendants'] statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute citing to the affidavits and other documents submitted in connection with the motion." Plaintiffs' submission merely contains 7 objections to the 92 material facts submitted between both groups of Defendants. Thus, the remaining 85 material facts are deemed undisputed. L. Civ. R. 56.1(a)

After allegedly "finding" an iPhone 5 in his bag on the school bus on the way home from practice on January 9, 2014, Plaintiff Rivera brought the phone home, charged it, called his cousin to ask how much he should ask for the reward since he was "just looking for a reward", took out the SIM card so it "could not be tracked" because he did not want the police to come to his house, and flushed the SIM card down the toilet. (Rivera Dep. 46:1-53:1, 145:2-13.) As it turned out, the cell phone belonged to James Young ("Young James"), one of Plaintiff Rivera's teammates on the wrestling team and the son of Atlantic City police officer Mr. James Bower ("Mr. Bower"). (Young James Dep. 26:9-16.) Young James had stored his phone in his locker prior to wrestling practice and the phone was not there at the end of practice. (Id. at 47:21-24, 48:23-25, 49:9-18.) Young James reported the phone missing to his coaches. (Id. at 52:5.)

When Mr. Bower learned that his son's phone was missing, he utilized a GPS tracking system contained within the Apple iPhone in order to trace the phone to 106 Glenn Avenue, Egg Harbor Township, New Jersey, where Plaintiffs resided. After learning of the phone's location, Mr. Bower and his son traveled to the location to retrieve the son's iPhone. (Bower Dep. 28:14-20.) 106 Glenn Avenue is owned by plaintiff, Dickson Hidalgo Paredes, who was not present at his home when Mr. Bower and Young James went to retrieve the iPhone. (Paredes Dep. 15: 13-15, 40:22-25, 41:1-6.)

According to Mr. Bower, prior to leaving his home, he called

Defendant Lt. David Algeri of the Egg Harbor Township Police Dept., now deceased, and asked Lt. Algeri for assistance. (Bower Dep. 24:25, 25:1-7.) Once Bower arrived to Plaintiffs' residence, he, again, called Defendant Lt. David Algeri on his cell phone to inform him that he was outside of Plaintiffs' residence and that he required police assistance in order to recover his son's phone. (Pol. Def. Br., Ex. D. at ¶ 8.) Defendant Algeri then reported the information to dispatch and asked them to send a unit to Plaintiffs' home. (Id.) Prior to any EHT police unit going to 106 Glenn Avenue, Plaintiff Rivera, the juvenile accused of taking the phone, had given the phone back to Mr. Bower. (Rivera Dep. 153: 2-5, 164:1-4.)There is no factual dispute that Plaintiff Rivera admitted he took Young Bower's cell phone from the locker room of the high school wrestling team of which both were members, as discussed further herein.

Besides Lt. Algeri, none of the responding officers spoke to Mr. Bower regarding the stolen iPhone prior to the officers' arrival at 106 Glenn Avenue. (Bower Dep. 59:24-25, 60:1-9, 62:3-7.) Moreover, prior to their arrival, Lt. Algeri did not speak with any unit or officer who came onto the scene. (Pol. Def. Br., Ex. F, ¶¶ 3-4; Ex. G., ¶¶ 3-4.) The EHT officers that arrived on scene were Defendants Officer Ware, Officer DeFazio and Officer Burns. (Rivera Dep. 171:17-172:4.) During his deposition, Plaintiff Rivera testified that none of the EHT police ever touched him. (Id.) Moreover, the EHT officers did not attempt to

enter Plaintiff Rivera's room, nor did they see anything personal to Plaintiff Rivera. (Id. at 186:6-12.) The only direction that the EHT officers gave Plaintiff Rivera was a request to get his stepmother. (Id. at 175:19-20.) While inside Plaintiffs' residence, Officer Ware advised the stepmother of the reason why they were there, that criminal charges were being pressed against Plaintiff Rivera and what they could expect next. (Ware Dep. 22:4-10.) Following that evening, the only criminal complaint filed against Plaintiff Rivera regarding accusations of him stealing the phone was filed by Mr. Bower, not any EHT police officer. (Id. at 161:4-11, Pol. Def. Br., Ex. H.)

Pursuant to a Memorandum of Agreement between the Egg Harbor Township School District and the Egg Harbor Township Police Dept., Officer Ware sent an email to the Egg Harbor Township High School on January 10, 2014 concerning the charges against Plaintiff Rivera. (Ware Dep. 9-11; Pol. Def. Br., Ex. N.)

On January 10, 2014, Defendant Dr. Scelso, Vice Principal at EHTHS at all times relevant to this litigation, called Plaintiff Rivera into her office at approximately 7:40 AM after receiving notification from the EHTHS Athletic Director, Michael Pellegrino, that there was an issue involving two wrestlers, including Plaintiff Rivera, and the police, due to an incident that occurred on school property the previous day. (Def. Br., Ex. C; Scelso Dep. 11:8-12:6.) Dr. Scelso took handwritten notes during the January 10, 2014 meeting with Plaintiff Rivera. (Id. at 12:11-14.)

Plaintiff Rivera told Dr. Scelso his version of the events that took place on the previous day, January 9, 2014, which involved Plaintiff Rivera being in the possession of the iPhone belonging to another student from his wrestling team, James Bower, Jr., without authorization or permission. (Def. Br., Ex. C.) After speaking with Plaintiff Rivera, Dr. Scelso requested that Plaintiff Rivera provide a written statement. (Rivera Dep. 63:9-11.) Plaintiff Rivera provided a written statement at Dr. Scelso's direction at 8:01 AM that morning. (Def. Br., Ex. C.) Shortly thereafter, at approximately 9:31 AM, Dr. Scelso received an email correspondence from Officer Curt Ware of the Egg Harbor Township Police Dept. ("EHTPD"), advising of "an incident that occurred in the high school on 1/9/14 during wrestling practice." (Def. Br., Ex. F.)

Officer Ware's email to Dr. Scelso stated, in relevant part, as follows:

> A cell phone was stolen out of a member of the wrestling teams [sic] locker that was reportedly locked. During the course of the investigation during the evening of 1/9/14 the phone was located in the possession of a fellow member of the wrestling team.
>
> The victim was identified as James Brower [sic].
>
> The accused was identified as Diomar Valentin Rivera.
>
> Complaints were signed by the parent of Brower [sic] against Valentin Rivera.

(Id.)

Less than one hour after receiving this email, Dr. Scelso

received another email correspondence from Detective Sergeant Fred Spano of the EHTPD, which provided additional information concerning the incident, and which stated in relevant part as follows:

> Theft of cell phone – son of ACPD Officer James Bower had his cell phone stolen out of his locker at wrestling practice today at the high school – Tracking on the phone alerted Bower to the residence of 106 Glenn Ave – while awaiting patrols [sic] arrival, Bower observed a subject exit the residence – the son recognized him as a fellow member of the wrestling team – Bower approached the subject and identified himself and the subject produce[d] the phone after being confronted by Bower – juvenile complaints were signed by Bower and the phone recovered minus the SIM card which the accused stated that he flushed down the toilet.

(Id.)

Later that afternoon, following her receipt of the email correspondences from the EHTPD, at approximately 12:00 PM, Dr. Scelso once again called Plaintiff Rivera into her office. (Rivera Dep. 66:2-10; Scelso Dep. 16: 15-24.) Dr. Scelso provided Plaintiff with the information she received from the EHTPD, and she remarked that Plaintiff Rivera had not told her that he removed the iPhone's SIM card and disposed of same. (Rivera Dep. 66:12-67:14.) Plaintiff conceded that he did not include that information in the written statement previously provided to Dr. Scelso. (Id.)

During this second meeting, relying on the statements of the EHTPD Officers and plaintiff Rivera's statements, Dr. Scelso informed Plaintiff Rivera that he was suspended for four days. (Id. at 67:17-68:1; Scelso Dep. 28:2-7.) Shortly after advising

Plaintiff of the suspension, Dr. Scelso contacted plaintiff Rivera's father, Plaintiff Dickson Hidalgo Paredes ("Mr. Paredes"), at approximately 1:29 P.M., by telephone, in order to advise him of the situation. (Scelso Dep. 26:12-27:2; Paredes Dep. 49:5-19, 50:1-3.) During this phone conversation, Mr. Paredes did not indicate that he wanted to appeal or challenge the suspension in any manner. In fact, Mr. Paredes never expressed any desire to appeal the suspension, nor did he familiarize himself with the process to do so. (Scelso Dep. 40:16-1; Paredes Dep. 60:23-25, 69:9-12.)

Also, on January 10, 2014, Dr. Scelso sent a written correspondence directed to the "parent/guardian" of Plaintiff Rivera, in which she advised of the suspension, the terms of the suspension and the basis of the suspension, and further advised to contact her with any questions pertaining thereto. (Def. Br., Ex. G.)

**B. Relevant Policies and Procedures**

1. Memorandum of Agreement Between EHT and EHT Police Dept.

The Egg Harbor Township Police Dept. entered into a memorandum agreement with the Egg Harbor Township School District which, in relevant part, provides as follows:

**Article 5. School Access to Law Enforcement Information**

**5.1 Statutory Authority to Disclose Information**

Law enforcement and prosecuting agencies are required to advise the principal of the school where the student is enrolled when:
The offense occurred on school grounds, including on

school busses or at school sponsored functions, or was committed against an employee or official of the school

**5.2 Agreement to Disclose Information Following a Charge**

Where a juvenile has been charged with an act of delinquency that if committed by an adult would constitute a crime or offense, it is requested and pursuant to the Authority of <u>N.J.S.A.</u> 2A:4A-60d (1) and (3) that the law enforcement agency or County Prosecutor's Office shall promptly provide information as to the identity of the juvenile, the offense charged, the adjudication and the disposition to (l) the principal of any school that is the victim offense; (2) the principal of any school that employs the victim of the offense; and (3) the principal of any school where the juvenile is enrolled.

(Pol. Def. Br., Ex. N.)

2. <u>EHT High School Student Handbook</u>

The EHTHS Student Handbook section entitled "Discipline" explicitly provides that "It is the student's responsibility to become familiar with all information in the student handbook." (Board Def. Br., Ex. K, p. 8.) Moreover, the specific process by which student discipline may be challenged by a parent is set forth in the Student Handbook as follows: "If you have a disagreement with discipline or other matters related to the school, please follow the appropriate procedure before contacting the teacher/coach, supervisor, assistant principal."(<u>Id.</u>)[2]

"Theft" is defined within the Disciplinary Code and the corresponding discipline is also set forth therein: "Pupils

---

[2] This procedure is also provided in "District Regulation 5600" of the Pupil Discipline section of the District Policy. (<u>See</u> Board Def. Br., Ex. L.)

illegally possessing school property or the property of others will receive a minimum of one Saturday Detention and/or up to a ten (10) day out of school suspension." (Id. at 25, No. 37.)[3]

3. EHT School District Student Discipline/Code of Conduct Policy

The Egg Harbor Township School District' Student Discipline/Code of Conduct Policy and Regulation is disseminated annually to all school staff, pupils, and parent(s) or legal guardian(s). (Board Def. Br., Ex. M.) The District Policy provides that "every student enrolled in the Egg Harbor Township School District shall observe the promulgated rules and regulations and submit to the discipline imposed for infraction of those rules." (Id.) The District Policy further provides that any student to be disciplined "shall be provided the due process procedures for pupils and their families as set forth in N.J.A.C. 6A:16-7.2 through 7.6". (Id.) Pursuant to District Policy 5610, "even the temporary exclusion of a pupil from the educational program of the District is a severe sanction and one that cannot be imposed without due process." (Id.)

According to the District Policy, "Conduct which shall constitute good cause for suspension or expulsion of a pupil guilty of such conduct shall include, but not be limited to, the conduct as defined in N.J.S.A. 18A:37-2 and the school district's

---

[3] The "Chart of Discipline" set forth in District Regulation 5600 also provides for a minimum of one-Saturday Detention and/or up to a ten (10) day out of school suspension for "theft." (Board Def. Br., Ex. L.)

Pupil Discipline/Code of Conduct Policy and Regulation in accordance with the N.J.A.C. 6A:16-7.1. et seq." (<u>Id.</u>) "In each instance of a short-term suspension, the pupil and their parent(s) or legal guardian(s) will be provided oral or written notice of the charges and an informal hearing conducted by the building Principal or designee in accordance with the procedures outlined in N.J.A.C. 6A:16-7.2." (<u>Id.</u>)

4. EHT School District Policy on Pupil Records

The District Policy (District Policy 8330 – Pupil Records) provides that student records are subject to challenge on the grounds of "inaccuracy, irrelevancy, impermissible disclosure, inclusion of improper information or denial of access to organizations, agencies, and persons in accordance with <u>N.J.A.C. 6A:32-7.7(a)</u>." (Pol. Def. Br., Ex. O.) To request a change in the record or to request a stay of disclosure pending final determination of the challenged procedure, the process is as follows:

1. A parent or adult pupil shall notify the Superintendent in writing of the specific issues relating to the pupil's record.

2. Within ten (10) days of notification, the Superintendent or designee shall notify the parent or adult pupil of the school district's decision.

3. If the school district disagrees with the request, the Superintendent or designee shall meet with the parent or adult pupil to revise the issues set forth in the appeal.

4. If the matter is not satisfactorily resolved, the parent or adult pupil may appeal this decision either to the Board or the Commissioner of Education within ten (10) days.

5. If appeal is made to the Board, a decision shall be rendered within twenty (20) days. The decision of the Board may be appealed to the Commissioner pursuant to N.J.S.A. 18A:6-9 and N.J.A.C. 6A:4, Appeals.

(Id.)

## C. Procedural History

On April 26, 2015, Plaintiffs commenced a civil action against James Bower, the City Of Atlantic City, Egg Harbor Township, Egg Harbor Township High School, Egg Harbor Township Police Dept., New Jersey Atlantic City Police Dept., asserting various state and federal constitutional rights violation claims arising out of the abovementioned facts. [Docket Item 1.] On May 02, 2016, James Bower, the City of Atlantic City, Atlantic City Police Dept., Egg Harbor Township and Egg Harbor Township Police Dept. were dismissed from this action pursuant to a previous settlement agreement in which Plaintiffs agreed to withdraw all civil claims against these parties in exchange for James Bower withdrawing the criminal complaint against Plaintiff Rivera. [See Docket Item 37.] Thereafter, Plaintiffs filed an Amended Complaint naming Defendants Dr. Alicia K Scelso, Officer David Algeri, Officer Curt Ware, Officer Burns, and Officer Defazio for the first time. [Docket Item 48.]

On June 1, 2017, Board Defendants Egg Harbor Township Board of Education and Dr. Scelso filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(c). [Docket Item 63.] On the same date, "Police Defendants," Officer David Algeri, Officer Curt Ware, Officer Burns, and Officer Defazio, also filed a separate

Motion for Summary Judgment pursuant to <u>Fed. R. Civ. P.</u> 56(c). [Docket Item 66.] Additionally, on June 1, 2017, Plaintiffs filed a motion for summary judgment. [Docket Item 64.] Both groups of Defendants filed separate opposition briefs to Plaintiffs' motion for summary judgment. [Docket Item 77, 78.] The Court notes that Plaintiffs failed to file an opposition to either the Board Defendants' or the Police Defendants' motions for summary judgment pursuant to the Federal Rules of Civil Procedure and the District of New Jersey Local Civil Rules. In fact, in a letter dated July 8, 2017, Plaintiffs' counsel stated that "as for [his] decision not to file an opposition brief, [he] submit[s] that no opposition brief is necessary since [he] [has] presented the entire legal argument in his initial brief and would be saying nothing additional in an opposition brief." [Docket Item 79.] For this reason, rather than viewing Defendants' motions for summary judgment as being unopposed, the Court will simply consider Plaintiffs' moving papers to be its opposition to Defendants' motions for summary judgment. Any statement of material facts listed in the Defendants' motion for summary judgment shall, however, be deemed undisputed unless Plaintiffs have pointed to evidence in the record that raises such a dispute, in accordance with L. Civ. R. 56.1(a), which Plaintiffs largely failed to do.

**III. DISCUSSION**

**A. Summary Judgment Standard**

At summary judgment, the moving party bears the initial

burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. Hunt v. Cromartie, 526 U.S. 541, 552 (1999); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). Credibility determinations are not appropriate for the court to make at the summary judgment stage. Davis v. Portline Transportes Maritime Internacional, 16 F.3d 532, 536 n.3 (3d Cir. 1994).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The non-moving party "'need not match, item for item, each piece of evidence proffered by the movant,'" but must simply present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. Boyle v. Cnty. of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998)(quoting Anderson, 477 U.S. at 252).

The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions. Weissman v. United States Postal Serv., 19 F. Supp. 2d 254 (D.N.J. 1998). When ruling on cross-motions for summary judgment, the court must consider the motions independently, Williams v. Philadelphia Hous. Auth., 834 F. Supp. 794, 797 (E.D. Pa. 1993), aff'd, 27 F.3d 560 (3d Cir. 1994), and view the evidence on each motion in the light most favorable to the party opposing the motion, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587(1986).

### B. Plaintiff's Claims Against Board Defendants

Though the precise claims asserted against the Board Defendants in the Amended Complaint are somewhat unclear, the Court will be guided by the Plaintiffs' moving papers, which, according to Plaintiffs' counsel, presents "the entire legal argument". [Docket Items 69; 79.] Plaintiffs claim that Plaintiff Rivera was deprived of his property right in his education without due process. (Pl. Br. at 2.) Additionally, Plaintiffs claim that Defendant Dr. Scelso is liable for Section 1983 constitutional torts as a result of suspending Plaintiff Rivera pursuant to the Memorandum of Agreement between Egg Harbor Township School District and Egg Harbor Township Police Dept., which Plaintiffs believe to allow "the police report an offense without probable cause to believe the student actually committed that offense."

(Id. at 7.) Lastly, Plaintiffs assert that Defendant Egg Harbor Township Board of Education should be enjoined to remove Plaintiff Rivera's suspension for a variety of reasons. (Id. at 9-11.)

### 1. **Plaintiff Rivera's Procedural Due Process Claim**

Plaintiff Rivera argues that his right to due process was violated when Dr. Scelso suspended him without "even a cursory investigation" of the incident, "without asking the alleged victim if his phone had been stolen or why he thought it was stolen as opposed to misplaced" and without "picking up the phone to call the EHT Police Officers" regarding the allegations. (Pl. Br. at 3.)

As Plaintiffs correctly point out, the U.S. Supreme Court in Goss v. Lopez, 419 U.S. 565 (1975) held that a state's compulsory school attendance statute gives a student both a property and liberty interest in an education and that those rights cannot be denied without "fundamentally fair procedures to determine whether the misconduct had occurred." 419 U.S. at 574 575. The Supreme Court's holding in Goss v. Lopez went further in mandating that, before being suspended, the student must be given notice (oral or written) of the charges and, if the student denies the charge, an explanation of the evidence and an opportunity to present evidence. Id. at 581. However, in order to establish a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must have taken advantage of the processes that are available to him or her, unless those procedures are unavailable or patently

inadequate. <u>Alvin v. Suzuki</u>, 227 F.3d 107, 116 (3d Cir. 2000). In other words, "[i]f there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." See <u>Rink v. Ne. Educ. Intermediate Unit 19</u>, No. 16-3183, 2017 U.S. App. LEXIS 25379, at *40 (3d Cir. Dec. 15, 2017)(non-precedential); <u>McDaniels v. Flick</u>, 59 F.3d 446, 460 (3d Cir. 1995); <u>Dwyer v. Regan</u>, 777 F.2d 825, 834-35 (2d Cir. 1985), modified on other grounds, 793 F.2d 457 (2d Cir. 1986); <u>Riggins v. Board of Regents</u>, 790 F.2d 707, 711-12 (8th Cir. 1986).

In the present case, the Court finds that it is clear that the Defendant Egg Harbor Township Board of Education had in place "a process that appears to provide due process" for students, such as Plaintiff Rivera, who were suspended for alleged misconduct. <u>Alvin</u>, 227 F.3d 107, 116. The School District policy provided that "[i]n each instance of a short-term suspension, the pupil and their parent(s) or legal guardian(s) will be provided oral or written notice of the charges and an informal hearing conducted by the building Principal or designee in accordance with the procedures outlined in <u>N.J.A.C.</u> 6A:16-7.2." It is undisputed, as Dr. Scelso testified that she met with Plaintiff Rivera on two occasions to gather his side of the story regarding the accusation that he stole another student's cell phone. (Scelso Dep. 11:8-12:6, 12:11-14, 16:15-24, 28:2-7.) Dr. Scelso made sure that these conversations were documented. (Board Def. Br, Ex.'s C & G.)

Ultimately, Dr. Scelso exercised her discretion and decided to suspend Plaintiff Rivera for four days. (Scelso Dep. 66:2-10, 67:17-68:1.) Additionally, Dr. Scelso called Plaintiff Rivera's father to inform him that his son would be suspended. (<u>Id.</u> at 26:12-27:2.)

The Court finds that the undisputed facts establish that, following the imposition of the four-day suspension, Plaintiff Rivera and his father, Plaintiff Paredes failed to take advantage of the processes that were available to them to challenge Dr. Scelso's decision to suspend Plaintiff Rivera. <u>Alvin</u>, 227 F.3d at 116. Both the EHT Student Handbook and the District Policy outline a procedure for parents and/or students to challenge a decision related to the discipline of a student. (<u>See</u> Board Def. Br., Ex. K, p. 8; Ex. L.) Despite having this established process to challenge Plaintiff Rivera's suspension available to them, Plaintiff Paredes admitted that he never expressed any desire to Dr. Scelso or any other school administrator to challenge his son's suspension. (Paredes Dep. 60:23-25, 69:9-12.) For these reasons, the Court finds that there is no genuine dispute of material fact with respect to Plaintiff Rivera's procedural due process violation claim; rather, the undisputed facts demonstrate that Plaintiff Rivera's substantive due process claim fails as a matter of law.

   2. <u>Plaintiff Rivera's Substantive Due Process Claims</u>

To the extent that Plaintiff Rivera asserts substantive due

process claims against the Board Defendants, the Court finds that these claims also fail.

To establish a substantive due process claim, a plaintiff must show that government actors deprived them of a fundamental property interest and that such deprivation "shocks the conscience." <u>United Artists Theatre Circuit. Inc. v. Township of Warrington, PA</u>, 316 F.3d 392, 399-400 (3d Cir. 2003). Only the most egregious official conduct is conscience-shocking. <u>Eichenlaub v. Twp. Of Indiana</u>, 385 F.3d 274, 285 (3d Cir. 2004). New Jersey state courts have applied the identical "shocks the conscience" standard to claims of substantive due process violations. <u>Rivkin v. Dover Twp. Rent Leveling Bd.</u>, 143 N.J. 352, 366 (1996) ("substantive due process is reserved for the most egregious governmental abuses against liberty or property rights, abuses that 'shock the conscience or otherwise offend . . . judicial notions of fairness . . . [and that are] offensive to human dignity.'").

The Court finds that the record is void of any evidence of misconduct or abuse committed by the Board Defendants that could ever be found to "shock the conscience." Moreover, Plaintiff Rivera fails to assert any persuasive or cognizable argument that could establish an act or omission by Board Defendants that would shock the conscience or are offensive to human dignity. <u>Rivkin</u>, 143 N.J. at 366. In fact, the Court is not convinced that the Board Defendants did anything that could be considered improper. Simply

put, this was a situation where a student, Plaintiff Rivera,
admitted to being in the possession of another student's valuable
cell phone, taken without that other student's permission on
school property. Additionally, Plaintiff Rivera admitted to the
police that he took the SIM card out of the phone and flushed it
down the toilet, which is undisputed evidence of his efforts to
avoid detection. This information was relayed to Dr. Scelso.
However, when Plaintiff Rivera initially communicated his version
of the events that took place to Dr. Scelso, he omitted the fact
that he flushed the SIM card down the toilet so it "could not be
tracked". (Rivera Dep. 46:1-53:1, 145:2-13.) Relying on this
information, Dr. Scelso acted within her discretion and issued a
four-day suspension, a decision that Plaintiff Rivera and his
father, Plaintiff Paredes, failed to challenge. Moreover, Dr.
Scelso made sure to document these conversations and to follow the
processes that the District and the high school had in place, all
of which can be found in the evidentiary record. Upon this record
of theft from a fellow wrestling team member, it would more likely
"shock the conscience" if the Board Defendants took no
disciplinary action to suspend Plaintiff Rivera.

After carefully reviewing the evidentiary record, the Court
also finds that there is no reason to believe that Dr. Scelso's
decision was arbitrary, capricious or unreasonable. See Quinlan v.
Bd. of Educ., 73 N.J. Super. 40, 47 (App. Div. 1962)("When [a
Board] has acted within its authority, its actions will not

generally be upset unless there is an affirmative showing that its judgment was arbitrary, capricious or unreasonable."). Though Plaintiff asserts various arguments regarding what Dr. Scelso failed to do, he cites to no authority to support his interpretation of what Dr. Scelso had a legal obligation to do.[4] (Pl. Br. at 7.) For these reasons, the Court finds that there is no genuine dispute of material fact with respect to Plaintiff Rivera's substantive due process violation claim; rather, the undisputed facts demonstrate that Plaintiff Rivera's substantive due process claim fails as a matter of law.

### 3. Plaintiff Rivera's *Monell* Claim

It appears that Plaintiff Rivera argues that the Uniform Memorandum Agreement between the Egg Harbor Township Police Dept. and the Egg Harbor Township Board of Education is an official policy or practice of the Board that "allowed [Dr. Scelso] to suspend [Plaintiff Rivera] on a mere police email alleging [Plaintiff Rivera's] crime without a need for Dr. Scelso to do any independent inquiry. To the extent that Plaintiff Rivera seeks to proffer this argument in order to establish a Monell claim, the Court finds this argument to be unpersuasive and contrary to the

---

[4] A district board of education must follow the procedures set forth in N.J.A.C. 6A:16-7.2 to "assure the rights of a student" prior to issuing a suspension to the student for 10 days or less. Although the requirements of N.J.A.C. 6A:16-7.2 include an "informal hearing" with the student to be suspended, they do not include hearings, interviews or conversations with anyone else, including but not limited to other students or law enforcement involved in the underlying incident.

evidentiary record.

Local governing bodies, including school boards, "can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978). This requirement that the municipal entity must have an official policy or custom that is unconstitutional means that "a municipality cannot be held liable solely because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691. The Supreme Court has "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403 (1997).

The Court finds that Plaintiff Rivera has not produced any evidence to support its argument that the Memorandum of Agreement infringes upon the civil rights of students, such as Plaintiff Rivera, "under the aegis of official policy." It seems that the crux of Plaintiff Rivera's argument is that he was suspended from school as a result of EHTPD reporting to Egg Harbor Township High School, pursuant to the Memorandum of Agreement, that he committed an "offense without probable cause to believe the student actually committed that offense." (Pl. Br.at 7.) However, the Court finds

that Plaintiff's continuous assertions that there was no probable cause to suspect that Plaintiff had committed the crime of theft are simply fictional.

Probable cause exists when, based on the factual circumstances, a prudent person could believe that a particular suspect has committed or is committing an offense. See Sharrar v. Felsing, 128 F. 3d 810, 817-18 (3d Cir. 1997); Islam v. City of Bridgeton, 804 F. Supp. 2d 190, 197 (D.N.J. 2011). In New Jersey, a person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof. N.J.S.A. § 2C:20-3 "Theft" is defined within the EHTHS Disciplinary Code and the corresponding discipline is also set forth therein: "Pupils illegally possessing school property or the property of others will receive a minimum of one Saturday Detention and/or up to a ten (10) day out of school suspension." (Board Def. Br., Ex. K., p. 25, No. 37.)

As previously discussed, Plaintiff Rivera, admitted to being in the possession of another student's cell phone without that other student's permission. Moreover, there is no dispute that the theft occurred on school property during the wrestling practice, which became clear to all by the time Dr. Scelso made her decision. Additionally, Plaintiff Rivera admitted to the police that he took the SIM card out of the phone and flushed it down the toilet to avoid detection. Pursuant to the Memorandum of Agreement, this information was relayed to Dr. Scelso, who acted

within her discretion by rejecting Plaintiff Rivera's unconvincing justification claiming that he "found" another student's cell phone in his bag. That there could be a conceivable innocent explanation for Rivera's possession of this iPhone does not deprive the case of abundant probable cause under the circumstances. The Court finds that Dr. Scelso's decision was reasonable, especially when one considers that Plaintiff Rivera initially failed to disclose to Dr. Scelso that he flushed the SIM card of the phone down the toilet. Most importantly, the Court finds that there was probable cause to suspect that Plaintiff Rivera committed the crime of theft, and Dr. Scelso was justified in relying upon the report from the EHTPD officers, sent pursuant to the Memorandum of Agreement, when making the decision to suspend Plaintiff Rivera for illegally possessing the property of another, student Bower's iPhone.

Because the Court rejects Plaintiff Rivera's only argument and underlying "evidence" in support of his <u>Monell</u> claim, as it is simply not supported by the evidentiary record, the Court finds that the undisputed facts demonstrate that Plaintiff Rivera's <u>Monell</u> claim against the Board Defendants fails as a matter of law.

### 4. <u>Plaintiff Rivera's Claim for Injunctive Relief</u>

Plaintiff Rivera argues that the Court should enjoin the Board Defendants to remove Plaintiff's four-day suspension from his high school discipline file because (1) Dr. Scelso suspended

Plaintiff Rivera without any proof of an off-campus offense; (2) Plaintiff Rivera was suspended on information provided by the EHTPD in violation of the terms of the Memorandum of Agreement; (3) the N.J.A.C. has no provision for Plaintiff Rivera's suspension based on the destruction of property while off-campus and in his own home; (4) and, the Board's Policy #5610 requires that a suspension record be removed if the student is found innocent of the charge for which he was previously suspended. (Pl. Br. at 9-11.) The Court rejects these arguments.

The EHT Board Policy 5160 provides, in part, that "all record of a suspension will be immediately expunged if the pupil is found innocent of the charges levied." (Board Def. Br., Ex. G.) The Court finds that there is no evidence in the record that establishes that Plaintiff Rivera was found innocent of the crimes listed in the criminal complaint filed against him by James Bower. Rather, the evidentiary record clearly indicates that James Bower simply agreed to withdraw the criminal complaint in exchange for Plaintiffs withdrawing any civil complaint against Bower. [See Docket Item 37.] Moreover, the record is void of any evidence that establishes that any EHT District employee and/or Board member determined that Plaintiff Rivera was "innocent" of violating the EHTHS Disciplinary Code by committing a "theft". Therefore, the Court finds that there is no basis for the expungement of Rivera's suspension from his disciplinary record under Policy 5610.

Most directly said, expungement does not lie as a remedy for

violation of constitutional rights when no such violation exists.
Additionally, to the extent that Plaintiff Rivera argues that he
is entitled to the requested equitable relief because of the
alleged deprivation of his constitutional due process rights, the
Court finds that Plaintiffs have failed to seek to have the
suspension expunged from Plaintiff Rivera's record, a remedy
available under District Policy 8330. (Pol. Def. Br., Ex. O.)
There also are no allegations that the processes for appeal or
record expungement afforded by the EHTHS Handbook, District policy
and/or New Jersey law were inadequate or somehow unavailable to
plaintiff. Alvin, 227 F.3d at 116. Lastly, as previously
discussed, Plaintiff Rivera's arguments with regard to the
Memorandum of Agreement between the EHTPD and the EHT School
District are without merit, as they completely ignore the evidence
in the record and are not supported by any legal authority.

For the abovementioned reasons, the Court finds that the
undisputed facts demonstrate that Plaintiff Rivera's claim seeking
to enjoin Board Defendants to remove Plaintiff Rivera's suspension
from his student discipline file fails as a matter of law. The
Board Defendants' motion for summary judgment will be granted.

### C. Plaintiffs' Claims Against Police Defendants

Though the precise claim(s) asserted against the Police
Defendants in the Amended Complaint are somewhat unclear, the
Court will be guided by the Plaintiffs' moving papers, which,
according to Plaintiffs' counsel, presents "the entire legal

argument". [Docket Items 69; 79.] Plaintiffs argue that the Police Defendants are liable under 42 U.S.C. § 1983 because they acted jointly with Atlantic City Police Officer James Bower when they entered into the home of Plaintiff Paredes without a search warrant, in violation Plaintiffs' Fourth and Fifth Amendment rights. (Pl. Br. at 2-6.) The Court must determine whether there are any genuine disputes of material facts with regard to Plaintiffs' § 1983 claims against Police Defendants.

1. <u>Plaintiffs' § 1983 Claims Against Police Defendants</u>

To state a § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575, 580-81 (3d Cir. 2003). A private citizen may be liable under § 1983 if they were acting under color of state law or "jointly engaged with state officials in the prohibited action." <u>Harvey v. Plains Twp. Police Dep't</u>, 421 F.3d 185, 195 (3d Cir. 2005) (quoting <u>United States v. Price</u>, 383 U.S. 787, 794 (1966)). "[T]he inquiry is whether there is a sufficiently close nexus between the State and the challenged action of the private party so that the action of the latter may be fairly treated as that of the State itself." <u>Id.</u> A private actor must be at least a "willful participant in joint activity with the State or its agents."

Here, Plaintiffs attempt to utilize the "joint participation" theory in order to impose § 1983 liability on the Egg Harbor Township Police Officers, the Police Defendants, for allegedly jointly engaging in prohibited action with James Bower by "enter[ing] Plaintiffs' property, detain[ing] [Plaintiff Rivera], interrogat[ing] [Plaintiff Rivera], and restrict[ing] [Plaintiff Rivera's] freedom of movement to an extent that a virtual arrest occurred," in violation of Plaintiff Rivera's Fourth and Fifth Amendment rights.(Pl. Br. at 6) (citing Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 195 (3d Cir. 2005)). However, the Court finds that Plaintiffs' arguments are not supported by the evidentiary record and that the Police Defendants' are entitled to judgment as a matter of law.

First, it is undisputed that none of Egg Harbor Township Police officers that were dispatched to Plaintiffs' home, the Police Defendants, had spoken to James Bower prior to arriving to the scene. [Docket Item 66-1, ¶ 12.] In fact, the only Defendant that spoke to James Bower was Defendant Officer David Algeri, who never went to Plaintiffs' home. (Id.) Further, it is undisputed that none of the responding officers, Officer Curt Ware, Officer Burns, and Officer Defazio, spoke to Officer David Algeri prior to arriving to the scene. (Id. at ¶13.) Thus, Plaintiff's attempt to impute the actions of James Bower onto Defendants Officer David Algeri, Officer Curt Ware, Officer Burns, and Officer Defazio has no basis, as there is nothing in the record that suggests that

James Bower was acting in accordance with or at the direction of any of the Egg Harbor Township police officers.

Moreover, there is no dispute that the Egg Harbor Township Police officers were acting under the color of state law when they arrived to Plaintiffs' residence on January 9, 2014. [Docket Item 66-1, ¶ 8.] It is also undisputed that James Bower had recovered his son's cell phone from Plaintiff Rivera and realized that the SIM card was missing prior to Officer David Algeri, Officer Curt Ware, Officer Burns, and Officer Defazio arriving to Plaintiffs' home. (Rivera Dep. 153:2-5, 164:1-4.) Though there appears to be a factual dispute as to whether the police officers entered Plaintiffs' home, the Court finds the precise time of arrival to be immaterial.

Once the EHT police officers arrived to the scene and learned that Plaintiff Rivera was in the possession of a cell phone that did not belong to him and that Plaintiff Rivera flushed the SIM card, the officers had probable cause[5] to arrest Plaintiff Rivera

---

[5] The Fourth Amendment prohibits police from making an arrest except "upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Far from demanding proof of guilt beyond a reasonable doubt, "[p]robable cause exists if there is a 'fair probability' that the person committed the crime at issue." Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (quoting Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)). Put another way, "probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995). The probable cause standard thus provides individuals protection "against unreasonable searches and seizures," U.S. Const. amend. IV, while simultaneously enabling investigating

for committing the crime of theft.[6] Thus, the officers would have been justified in entering the Plaintiffs' home. <u>See</u> <u>United States v. Santana</u>, 427 U.S. 38 (1976)(holding that when the police have probable cause to arrest a suspect, and when that suspect is standing in the doorway of her home, the police are justified in pursuing the suspect into her home when she retreats therein after the police identify themselves, even if the police do not have a warrant for the suspect's arrest); <u>see also</u> <u>Panarello v. City of Vineland</u>, 160 F. Supp. 3d 734, 753 (D.N.J. 2016). However, as the record indicates, the EHT police officers decided not to arrest Plaintiff Rivera. Rather, they asked to speak to Plaintiff Rivera's stepmother to inform her of the situation that her juvenile stepson was in. (Rivera Dep. 14:5-9.) In fact, Plaintiff Rivera testified that the officers told his stepmother that "they could [have] take[n] [him] into custody right [then] and then have her come get [him], but they were going to let [him] off." (<u>Id.</u> at 183:15-25.) Having found that officers were justified in entering Plaintiffs' home, the Court finds that the Police Defendants did not violate Plaintiffs' Fourth Amendment rights.

---

officers to act quickly—before necessarily obtaining evidence sufficient to prove guilt beyond a reasonable doubt—to effect an arrest. "[T]he standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." <u>Wright v. City of Phila.</u>, 409 F.3d 595, 603 (3d Cir. 2005).

[6] In New Jersey, a person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof. <u>N.J.S.A.</u> § 2C:20-3

With regard to Plaintiff Rivera's purported Fifth Amendment violation claim, Plaintiff Rivera argues that "Officer Ware failed to intervene, and advise [Plaintiff Rivera] of his Fifth Amendment right against self-incrimination." (Pl. Br. at 6.) However, there is no viable claim or remedy for a *Miranda* violation other than to have the alleged self-incriminating statement suppressed. Riddick v. Leh, Civ. No. 96-3975, 1997 U.S. Dist. LEXIS 10116, at *12 (E.D. Pa. July 15, 1997)("the remedy for a violation of a suspect's Miranda rights is the exclusion from evidence of any compelled self-incrimination, not a civil rights action under 42 U.S.C. § 1983").

Finally, to the extent that Plaintiff Rivera seeks to assert a § 1983 claim against Police Defendants for false arrest, the Court finds that the deposition testimony of Plaintiff Rivera clearly indicates that Plaintiff Rivera was not arrested or restrained; rather, Plaintiff Rivera was merely informed that Bower would be pressing charges and that Plaintiff Rivera could expect a summons in the mail within the following two weeks. (Rivera Dep. 183:17-21.) Notably, Plaintiffs do not dispute that the EHT officers specifically indicated to Plaintiff Rivera that they were not going to arrest him and "take him to court" because he was already home. [Docket Item 66-1, ¶ 23.](Rivera Dep. 189:16-25.) Plaintiffs fail to argue how this interaction amounts to an arrest. Therefore, the Court finds that Plaintiff Rivera cannot establish a claim for false arrest, as there is no factual dispute

as to whether Plaintiff Rivera was ever arrested by the Police Defendants. See Colbert v. Angstadt, 169 F.Supp. 2d 352, 358-59 (E.D. Pa. 2001) (holding that a plaintiff could not establish a false arrest claim where he was not formally arrested but received a summons by mail, instructing him to appear in court on a particular date).

Because Plaintiffs have failed to establish that Defendants Officer David Algeri, Officer Curt Ware, Officer Burns, and Officer Defazio engaged in conduct that "deprived the plaintiff[s] of a right, privilege, or immunity secured by the Constitution or laws of the United States", the Court finds that Plaintiffs' § 1983 claims against these Defendants fail as a matter of law. Natale v. Camden County Corr. Facility, 318 F.3d 575, 580-81 (3d Cir. 2003)

## IV. CONCLUSION

For the aforementioned reasons, the Board Defendants' motion for summary judgment will be granted. Additionally, Police Defendants' motion for summary judgment will be granted. Accordingly, Plaintiff's motion for summary judgment will be denied. An appropriate order follows.

**December 26, 2017**           **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                       U.S. District Judge